IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SARAH GMYR-MAEZ,

       Plaintiff,

v.                                           No. CIV 15-0617 RB/SCY

ALBUQUERQUE POLICE OFFICER COLLIN
SCHNEIDER, individually and in his official
capacity, ALBUQUERQUE POLICE OFFICER
CHRISTINE APODACA, individually and in her
official capacity, JOHN/JANE DOE SUPERVISOR,
individually and in his/her official capacity, and
CITY OF ALBUQUERQUE,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Amended Motion for Summary Judgment filed on September 3, 2015 (Doc. 30), and an affidavit from Plaintiff's counsel, which the Court construes as a motion for relief from the stay and for limited discovery (Doc. 39). Jurisdiction arises under 28 U.S.C. § 1331.

Having considered the submissions of counsel and relevant law, the Court will **GRANT IN PART** Defendants' Amended Motion for Summary Judgment, and **GRANT IN PART** Plaintiff's motion for relief from the stay and for limited discovery.

**I.      Procedural Background**

Plaintiff was arrested on March 4, 2014 based on allegations of misdemeanor domestic violence. (Doc. 24, First Am. Compl. ¶¶ 7–8; *see also* Doc. 40 at 2, ¶ 1.) Defendants Schneider and Apodaca drove Plaintiff and several male detainees to the Metropolitan Detention Center

(MDC), where Plaintiff alleges that Defendants left her in the transport van, handcuffed and eventually panicked, in freezing temperatures, for up to two hours. (First Am. Compl. ¶¶ 12–16, 19–27.)

Plaintiff filed her complaint in state court alleging (1) cruel and unusual punishment in violation of her Eighth Amendment rights; (2) excessive force in violation of her Fourth Amendment rights; (3) deprivation of her rights to be free from severe discomfort and from the risk of serious bodily harm in violation of her due process rights under the Fourteenth Amendment; (4) negligent operation of motor vehicles under the New Mexico Tort Claims Act; (5) negligent operation of equipment and machinery under the New Mexico Tort Claims Act; and (6) negligent hiring, training, supervision, and retention under the New Mexico Tort Claims Act. (*Id.* at ¶¶ 35–71.) Defendants removed the case to this Court on July 15, 2015, pursuant to 28 U.S.C. §§ 1441(b) and 1446(a). (Doc. 1.) Plaintiff filed an amended complaint on August 26, 2015 to correct the name of one Defendant. (First. Am. Compl.)

Defendants filed their original motion for summary judgment (later amended) and a Motion for Stay of Discovery and Request for Entry of Protective Order (Doc. 28) on September 1, 2015, asking the Court to stay discovery until their motion for summary judgment, which is largely based on qualified immunity grounds, is decided. Defendants, who were scheduled for depositions on September 3, 8, and 29, also filed a Notice of Nonappearance and Motion for Protective Order on September 2, 2015. (Doc. 29) Plaintiff responded to the motion to stay on September 15, 2015. (Doc. 38.) Accompanying her response is an affidavit from Plaintiff's counsel pursuant to Fed. R. Civ. Pro. 56(d), which this Court construes as a motion for relief from the stay and for limited discovery. (*See* Docs. 38-B; 39; 40 at 2–3.) Plaintiff seeks certain discovery in order to better answer Defendants' amended summary judgment motion. (*See* Doc.

39.) Defendants filed replies to their motions for protective order and stay on October 9, 2015.

(Docs. 43, 44.)

Defendants filed their Amended Motion for Summary Judgment on September 3, 2015

(Doc. 30), Plaintiff filed her response on September 15, 2015 (Doc. 40), and Defendants filed

their reply on October 9, 2015 (Doc. 47). Judge Yarbrough granted Defendants' motions for stay

and for protective order, reserving the issue of Plaintiff's request for relief from the stay for

consideration with Defendants' Amended Motion for Summary Judgment. (Doc. 51.) Remaining

before the Court are Defendants' Amended Motion for Summary Judgment (on all issues except

for any claims brought pursuant to a procedural or substantive due process standard)[1] and the

affidavit from Plaintiff's counsel, which the Court construes as a motion for relief from stay and

for limited discovery. (Docs. 30, 39.)

## II.    Statement of Facts[2]

On March 4, 2014, Plaintiff and her husband had a heated argument. (First Am. Compl. ¶

7; *see also* Doc. 40 at 2, ¶ 1.) Bernalillo County Sheriff's Office deputies responded and arrested

Plaintiff based on allegations of misdemeanor domestic violence. (First Am. Compl. ¶ 8.)

Plaintiff alleges that the deputies handcuffed her with her hands behind her back around 7:10

p.m. and transported her to the City of Albuquerque Prisoner Transport Center, where she was

transferred to the custody of officers with the Albuquerque Police Department (APD) around

8:41 p.m. (*Id.* at ¶¶ 10–11, 43.) Between the time of her arrest around 7:10 p.m. and her entrance

---

[1] In the Memorandum Opinion and Order on Defendants' Motion to Dismiss filed concurrently herewith, the Court dismissed Plaintiff's claim under the Fourteenth Amendment to the extent that she is bringing a procedural due process claim or a claim using the substantive due process standard (i.e., that Defendants' behavior was outrageous or shocked the conscience). Plaintiff's claim as to the conditions of her confinement under the Fourteenth Amendment remains.

[2] The majority of the facts are controverted at this stage of the case. In light of the fact that Plaintiff has not had the benefit of discovery and in accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to Plaintiff. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

into the MDC later that evening, Plaintiff alleges that the only time she was free of handcuffs was during the brief transfer of custody from the Bernalillo County Sheriff's deputies to the APD officers when they switched handcuffs. (Doc. 40 at 8, ¶¶ A–B.)

Defendants Schneider and Apodaca placed Plaintiff and eight male detainees in a police transport van. (First. Am. Compl. ¶ 12.) The officers separated Plaintiff, handcuffed and belted into her seat, into a small compartment within the van, where Plaintiff alleges she could not stand up, see Defendants, the other detainees, or outside of the van. (*Id.* at ¶ 14; Doc. 40 at 8, ¶ D–E; Doc. 40-1, Gmyr-Maez Aff. ¶¶ 6, 8.) The drive from the Prisoner Transport Center to the MDC is seventeen miles, and it is possible to travel the distance in approximately thirty minutes. (Docs. 30 at 6, ¶ 10; 40 at 5, ¶ 10.)

Plaintiff alleges that when they arrived at the MDC, Defendants removed the male detainees from the van but left Plaintiff in the van alone. (First. Am. Compl. ¶ 16; Doc. 40 at 8, ¶ F.) This fact is controverted by Defendant Schneider, who testified that it is his "habit, custom and practice to park the transport unit in a secure location and unload the prisoners to await booking." (Doc. 30-B, Schneider Aff. ¶ 8.) It is also Defendant Schneider's "habit, custom and practice to take the prisoners inside the MDC and remove their handcuffs so that they can wait to be called for their medical screening." (*Id.*)

At some point, Plaintiff could hear people talking outside the van in normal voices, but no one responded to her when she called out for help. (Doc. 40 at 8, ¶ G; Gmyr-Maez Aff. ¶ 10.) It was Plaintiff's perception that there was no ventilation in the van. (Gmyr-Maez Aff. ¶ 11.) Plaintiff submitted evidence that the outside temperature was somewhere between thirty and fifty-six degrees Fahrenheit on March 4, 2014. (Doc. 40-3.) Plaintiff, who asserts that she was only wearing a light sweater over her street clothes, became increasingly anxious, distressed,

panicked, and cold in the van. (Docs. 40 at 9, ¶¶ I–K; 40-2; Gmyr-Maez Aff. ¶¶ 12–14.) Plaintiff

alleges that when Defendant Schneider eventually retrieved her from the van, she was crying and

hyperventilating. (Gmyr-Maez Aff. ¶ 14.) Plaintiff asserts that Defendant Schneider asked her to

calm down and apologized for leaving her in the van. (*Id.*) Plaintiff alleges that she was left in

the van alone anywhere between 45 minutes and two hours. (First Am. Compl. ¶ 27.)

Plaintiff asserts that the "extended period" of time she was in handcuffs caused her to

suffer "significant pain in her wrists and shoulders, most especially during the period when she

was abandoned in the transport van." (Doc. 40 at 8, ¶ B.) The pain in her wrists and shoulders

lasted for several days. (*Id.* at 8, ¶ C.) Plaintiff asserts that she complained to the medical

screener at the MDC about the incident. (Gmyr-Maez Aff. ¶ 15.)

## III.     Legal Standards

### A.     Summary Judgment Standard of Review

Summary judgment is appropriate when the Court, viewing the record in the light most

favorable to the nonmoving party, determines "that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also*

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could

influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a

verdict for either party. *Id*. In cases where the moving party will not bear the burden of

persuasion at trial, the movant bears the initial responsibility of identifying "an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). The nonmoving party may not rely merely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324. Additionally, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Florom v. Elliott Mfg.*, 867 F.2d 570, 574 (10th Cir. 1989) (citation omitted), "the burden on the moving party may be discharged by" demonstrating to the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

**B.     Law Regarding Qualified Immunity**

The qualified immunity defense "protects law enforcement officials who are required to exercise their discretion by shielding them from liability for harm caused by reasonable mistakes." *G.M. ex rel B.M. v. Casalduc*, 982 F. Supp. 2d 1235, 1241 (D.N.M. 2013) (citing *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the

law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity grants such officials "an entitlement not to stand trial or face the other burdens of litigation . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"When a defendant moves for summary judgment on the basis of qualified immunity, the burden shifts to the plaintiff to demonstrate, on the facts alleged, that (1) the defendant violated her constitutional or statutory rights and (2) the right was clearly established at the time of the alleged unlawful activity." *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Casalduc*, 982 F. Supp. 2d at 1241 (quoting *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013)). In other words, in the light of pre-existing law, the unlawfulness of the official's actions must be apparent. *Id.* "If the plaintiff cannot meet either part of this burden, the defendant is entitled to qualified immunity." *Castillo*, 790 F.3d at 1019 (citing *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009)). The Court may address either prong of the two-step analysis first. *Casalduc*, 982 F. Supp. 2d at 1242 (citing *Courtney*, 722 F.3d at 1222).

IV.     **Discussion**

     A.     **Evidentiary Consideration**

As an initial matter, the Court will address the admissible evidence it has considered in ruling on Defendants' motion. Defendants rely on the police report and various booking documents to demonstrate Plaintiff's lack of evidence, without establishing that all of the

documents meet hearsay exceptions. (*See* Docs. 30; 30-A; 30-C; 30-D; 30-E(1); 30-F.) Plaintiff objects to using any of the information contained in the exhibits on the basis that the documents are excludable as hearsay. (*See* Doc. 40 at 2–7.) *See also* Fed. R. Evid. 801(c); *Dorato v. Smith*, 108 F. Supp. 3d 1064, 1071 n.6 (D.N.M. 2015) (quoting *United States v. Jimenez*, 275 F. App'x 433, 438 (5th Cir. 2008) ("Police reports are generally excludable as hearsay.")); *Henry v. Bd. of Leavenworth Cty. Comm'rs*, 64 F. Supp. 2d 1042, 1046 (D. Kan. 1999) ("In addition, the City of Leavenworth defendants rely almost exclusively on police reports, without showing that these reports meet any hearsay exception. To that extent, when defendants offer the reports for the truth of the matter asserted, the reports are hearsay and thus inadmissible . . . ."), *aff'd sub nom. Henry v. Bd. of Cty. Comm'rs , Leavenworth Cty.*, 229 F.3d 1163 (10th Cir. 2000) (citing *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998)); *United States v. McIntyre*, 997 F.2d 687, 698–99 (10th Cir. 1993) (documents offered for truth of statements they contain are hearsay)).

While police reports may be admissible for limited purposes in civil cases, *see* Fed. R. Evid. 803(8)(A)(ii), Defendants did not specifically argue that any of the Rule 803 exceptions applied to their exhibits. (Doc. 47 at 2–3, 8–9.) In fact, Defendants only presented cursory arguments for the admission of two documents: (1) Defendant Schneider's affidavit, and (2) the medical intake report. (*Id.* at 8–9.) Defendants contend that the portion of Defendant Schneider's affidavit regarding his habit, custom or practice is admissible pursuant to Fed. R. Evid. 406, which states "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit or routine practice." The Court has considered the specific portion of Defendant Schneider's affidavit that reflects this hearsay exception.

Defendants also contend that Ms. Brandee Winckel's affidavit authenticates the medical intake report as the medical record of her employer. (Doc. 47 at 9.) The Federal Rules of Evidence provide "an exception to the hearsay rule for business records if they are 'kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum [record].'" *United States v. Gwathney*, 465 F.3d 1133, 1140–41 (10th Cir. 2006) (quoting Fed. R. Evid. 803(6)). "The rationale behind the business records exception is that such documents have a high degree of reliability because businesses have incentives to keep accurate records." *Id.* (quoting *Timberlake Const. Co. v. U.S. Fidelity & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995)). Defendants presumably intend to rely on the business records exception to establish an exception to the hearsay rule, but they never specifically cite to 803(6). (*See* Doc. 47 at 8–9.) To admit the medical intake form pursuant to Rule 803(6), Defendants must show that the document was (1) "'prepared in the normal course of business;'" (2) "'made at or near the time of the events it records;'" (3) "'based on the personal knowledge of the entrant or of an informant who had a business duty to transmit the information to the entrant;'" and (4) did not involve "sources, methods, or circumstances indicating a lack of trustworthiness." *Id.* at 1140–41 (quoting *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1017 (10th Cir. 2004) (internal quotation omitted)). Defendants did not address these requirements in either their memorandum or in their reply brief, nor does Ms. Winckel's affidavit provide the requisite foundation. (*See* Docs. 30, 47, 30-E.) Because "the proponent of hearsay evidence bears the burden of establishing the applicability of a hearsay exception," the Court will not consider the medical intake form in deciding Defendants' motion. *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012) (citing *United States v. Ary*, 518 F.3d 775, 786 (10th Cir. 2008)). In accordance with summary judgment standards, the Court will view all admissible

evidence in the light most favorable to Plaintiff. Fed. R. Civ. P. 56; *see also Garrison*, 428 F.3d at 935.

**B.      Counts I/III & II—Claims Under the Eighth Amendment (via the Fourteenth Amendment) and Fourth Amendment**

Plaintiff alleges that her rights under the Eighth Amendment[3] were violated when Defendants left her handcuffed and seat belted in a vehicle with limited ventilation and no way to see outside for up to two hours with inadequate clothing to stay warm in thirty degree weather. (Doc. 40 at 11–14.) Plaintiff styles her Eighth Amendment claim as a "conditions of confinement" claim. (*Id.*) Plaintiff alleges that her rights under the Fourth Amendment were also violated, as Defendants' actions in leaving her in the van amounted to excessive force. (*Id.* at 14–16.)

**1.      Was Plaintiff an Arrestee or a Pretrial Detainee?**

The classification of a plaintiff as an arrestee or a pretrial detainee can have an impact on how a court analyzes the plaintiff's constitutional claims. A pretrial detainee "has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). An arrestee has not yet undergone a probable cause determination. *See, e.g.*, *Wilson v. Montano*, 715 F.3d 847, 852–53 (10th Cir. 2013) (noting that arrestees have "a Fourth Amendment right to a prompt probable cause determination") (citations omitted). The Supreme Court has noted that "pretrial detainees, who have not been convicted of any crimes,

---

[3] Plaintiff brings the conditions of confinement claims pursuant to the due process clause of the Fourteenth Amendment. (First. Am. Compl. at 5 n.1.) The Due Process Clause of the Fourteenth Amendment protects the constitutional rights of pretrial detainees to be free from cruel and unusual punishment. *See Glover v. Gartman*, 899 F. Supp. 2d 1115, 1144 (D.N.M. 2012) (citing *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999)). Nevertheless, the Tenth Circuit directs that courts "apply an analysis identical to that applied in Eighth Amendment cases" when pretrial detainees assert such rights under § 1983. *Lopez*, 172 F.3d at 759 n.2.

retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell*, 441 U.S. at 545. It would follow then that arrestees, who have not yet undergone a judicial determination of probable cause, would retain at least the same constitutional rights that pretrial detainees enjoy.[4] Because Plaintiff had only recently been arrested (without a warrant) and was en route to the MDC, she had not yet undergone a probable cause determination. (First Am. Compl. ¶¶ 8, 11–12, 16.) Accordingly, the Tenth Circuit would classify her as an arrestee for purposes of analyzing her constitutional rights.

The Court's analysis on Plaintiff's Eighth Amendment "conditions of confinement" claim will not depend on Plaintiff's classification as an arrestee. "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, *see Bell,* 441 U.S. [at 535], the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citing *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996)). An arrestee is no different: the Tenth Circuit has upheld the decision of a district court to apply the Eighth Amendment standard to an *arrestee's* conditions of confinement claim. *Bass v. Goodwill*, 356 F. App'x 110, 115–17 (10th Cir. 2009).[5] As Plaintiff notes in both her amended complaint and her response to Defendants' summary judgment motion (*see* First Am. Compl. at 5 n.1; Doc. 40 at 11), it is appropriate for the Court to apply an Eighth Amendment analysis to an arrestee's conditions of confinement claim. *See Bass*, 356 F. App'x at 115–17.

---

[4] The Court cannot find language where the Tenth Circuit has been so explicit on this point, but at least one other circuit court has held that "[a]n arrestee . . . 'is entitled *at least* to the protections afforded pretrial detainees.'" *Carlo v. City of Chino*, 105 F.3d 493, 499–500 (9th Cir. 1997) (quoting *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1485 (9th Cir. 1993) (finding that the Fourteenth Amendment protects an arrestee's state-created liberty interest to make three telephone calls immediately after being booked into jail), *cert. denied*, 510 U.S. 991 (1993).

[5] The Tenth Circuit has applied an Eighth Amendment standard to other claims from arrestees. *See, e.g.*, *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1310, 1315–17 (10th Cir. 2002) (denial of medical attention); *Martin v. Bd. of Cty. Comm'rs of Cty. of Pueblo*, 909 F.2d 402, 403, 406 (10th Cir. 1990) (inadequate medical attention); *Childress v. Harms*, 449 F. App'x 758, 759–61 (10th Cir. 2011) (denial of medical attention).

Where the distinction between arrestee and pretrial detainee truly comes into play is in a claim for excessive force. "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . and each carries with it a very different legal test." *Estate of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010)). The choice of amendment depends on "where the [plaintiff] finds [herself] in the criminal justice system." *Id.* at 419 (quoting *Porro*, 624 F.3d at 1325). The Fourth Amendment prohibits unreasonable seizures and is applied to excessive force claims where the alleged force occurs at any point "leading up to and including an arrest . . . ." *Id.* (quoting *Porro*, 624 F.3d at 1325–26.) The Eighth Amendment protects convicted prisoners from malicious or sadistic uses of force, *Hudson v. McMillian*, 503 U.S. 1, 6 (1992), and courts apply its analysis to inmate claims of excessive force. *Estate of Booker*, 745 F.3d at 419 (citing *Porro*, 624 F.3d at 1325–26.) "[W]hen the plaintiff finds [herself] in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment[,]" so that neither the Fourth nor the Eight Amendment is applicable, "we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Id.* (quoting *Porro*, 624 F.3d at 1326 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)). The Tenth Circuit has held, however, "that the Fourth Amendment provides the constitutional standard of review for claims of intentional excessive force that arise after a warrantless arrest but before a probable cause hearing or arraignment." [6] *Osei v. Brooks*,

---

[6] The Supreme Court has not drawn a bright-line distinction on when the Fourth Amendment's protection of an arrestee ends, and when the Fourteenth Amendment's protection begins. "This lack of constitutional clarity has led to a circuit split." *Osei v. Brooks*, No. 11-CV-01135-PAB-KMT, 2012 WL 1079465, at *5 (D. Colo. Mar. 5, 2012) *R. & R. adopted in part*, No. 11-CV-01135-PAB-KMT, 2012 WL 1079155 (D. Colo. Mar. 30, 2012). The court in *Osei* noted that the Second, Sixth, and Ninth circuits use the same standard that the Tenth Circuit applies; the Eighth Circuit has applied the Fourth Amendment standard "to an application of force that occurred in a holding cell after booking, but declin[ed] to set a bright line rule"; the Third Circuit has applied the Fourth Amendment standard to an incident before pretrial detention and noted that a seizure is a continuum; and the Fourth, Fifth, Seventh, and

No. 11-CV-01135-PAB-KMT, 2012 WL 1079465, at *5 (D. Colo. Mar. 5, 2012) *R. & R. adopted in part*, No. 11-CV-01135-PAB-KMT, 2012 WL 1079155 (D. Colo. Mar. 30, 2012) (citations omitted).

The alleged use of force in this case arose after Plaintiff's arrest and transfer of custody from Bernalillo County Sheriff's Officers to APD Officers, but before Plaintiff received a judicial determination of probable cause. (First Am. Compl. ¶¶ 11–12, 16.) In accordance with Tenth Circuit precedent, the Court will apply a Fourth Amendment analysis to Plaintiff's claim of excessive force. *See Osei*, 2012 WL 1079465, at *5 (citing *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995)).

## 2.    Eighth Amendment "Conditions of Confinement" Claim

A successful Eighth Amendment conditions of confinement claim requires a plaintiff to demonstrate evidence of both objective and subjective components. *Skelton v. Bruce*, 409 F. App'x 199, 202 (10th Cir. 2010). To satisfy the objective component, the plaintiff must show that "the deprivation alleged [is] objectively, 'sufficiently serious . . . .'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted)). To satisfy the subjective component, the plaintiff must establish that the official subjectively acted with "deliberate indifference to [her] health or safety." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Skelton*, 409 F. App'x at 202. Defendants contend that Plaintiff cannot establish evidence to support either the objective or subjective prong. (Doc. 30 at 9–12.)

---

Eleventh Circuits "have held that the Fourth Amendment becomes inapplicable after the act of arrest, and instead analyze post-arrest claims of excessive force as substantive due process claims under the Fourteenth Amendment." *Id.* at 5 (citations omitted).

**a.    Plaintiff has not satisfied the objective component.**

The conditions Plaintiff complains of "must be 'sufficiently serious' to implicate constitutional rights." *DeSpain v. Uphoff* (*DeSpain II*), 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). To satisfy this objective prong, Plaintiff "must show that conditions were more than uncomfortable, and instead rose to the level of 'conditions posing a substantial risk of serious harm' to [her] health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 834). The Eighth Amendment demands that officials provide inmates, and by extension pretrial detainees and arrestees, "humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Id.* at 974 (quoting *Craig*, 164 F.3d at 495 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998))).

Neither Plaintiff nor the Court has found a case with circumstances quite like these. The Tenth Circuit has examined conditions of confinement claims dealing with allegations of cold in two different contexts: (1) where inmates claim their cells are too cold; and (2) where inmates claim they have been improperly exposed to inclement weather in the prison yard. *See, e.g.*, *Mitchell v. Maynard*, 80 F.3d 1433, 1441–44 (10th Cir. 1996); *Mauchlin v. Bier*, 396 F. App'x 519, 521–22 (10th Cir. 2010); *Skelton*, 409 F. App'x at 203–09; *DeSpain v. Uphoff* (*DeSpain I*), 229 F.3d 1162, 2000 WL 1228003, at *3–4 (10th Cir. 2000) (unpublished table decision). Plaintiff's situation, where she was allegedly left outside in cold weather in a van, seems to be an amalgam of both contexts.

Where an inmate claims that his cell is too cold, the Tenth Circuit has noted that "[a]n allegation of inadequate heating may amount to a constitutional violation, . . . but we must consider the severity of the temperature, its duration, and whether the inmate has adequate

alternatives to protect himself from the cold, along with other prison conditions." *Skelton*, 409 F.

App'x at 204 (citations omitted). Similarly, "[e]xposure to inclement weather [outside] without

proper clothing can meet the objective prong of an Eighth Amendment violation, but . . . 'the

length of exposure to the conditions is often of prime importance.'" *Id.* at 208 (quoting *DeSpain*

*II*, 264 F.3d at 974). With these directives in mind, the Court examines the severity of the

temperature, the duration of Plaintiff's exposure, and the alternatives Plaintiff had to protect

herself while in the van, along with any other conditions Plaintiff allegedly experienced. *Id.* at

204.

Plaintiff produced evidence that on March 4, 2014, the temperature in Albuquerque was

between thirty and fifty-six degrees Fahrenheit. (Doc. 40-3.) Plaintiff alleges that she was

arrested and handcuffed at 7:10 p.m., she was transferred to APD custody at 8:41 p.m., it took

approximately thirty minutes to drive to the MDC (arriving around 9:11 p.m.), and she spent up

to two hours handcuffed alone in the transport van after they arrived at the MDC (until around

11:11 p.m.). (First Am. Compl. ¶¶ 10–11, 27, 43; Doc. 40 at 5, ¶10.) Viewing the facts in a light

most favorable to Plaintiff, the Court will assume Plaintiff spent approximately four hours in

handcuffs, two of those hours in a van without the heat on in thirty degree weather. Plaintiff

asserts that she was wearing a lightweight sweater over her street clothes. (Doc. 40-2.) The van's

doors were presumably closed and its windows rolled up. Plaintiff alleges that she could not see

outside of the van, and she was buckled into her seat. (First Am. Compl. ¶¶ 14, 22; Doc. 40 at 8,

¶¶ D–E.) Coupled with Plaintiff's assertion that her hands were cuffed behind her back, perhaps

for up to four hours, Plaintiff experienced limited mobility while inside the transport van. (Doc.

40 at 8, ¶¶ C–E.)

"In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain II*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d at 732) (citing *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) ("the length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases")). The Tenth Circuit has not defined with precision at what temperature a "short period" of time would qualify as a violation. Instead, the Court has collected cases from the Tenth Circuit and elsewhere to provide guidance on this question.

<u>Exposure to inclement weather outside</u>: The Tenth Circuit has found that exposure to rain, sleet, and snow for twenty to thirty minutes was too short a duration to meet the objective prong of a conditions of confinement claim where inmates were provided with wool-lined denim coats but no gloves, rain gear, or shelter. *Skelton*, 409 F. App'x at 206–08. The Tenth Circuit found support for its decision in cases from the Eighth and Sixth Circuits. *Id.* at 208 (citing *Gordon v. Faber*, 973 F.2d 686 (8th Cir. 1992); *Knop v. Johnson*, 977 F.2d 996 (6th Cir. 1992)). In *Gordon*, the Eighth Circuit affirmed the judgment of the district court finding an Eighth Amendment violation where inmates were forced to spend from one hour to one hour and forty-five minutes outside in sub-freezing temperatures with a significant wind chill. 973 F.2d at 687. Prison officials provided inmates with denim coats, but no hood, hats, or gloves, and the outdoor area offered no protection from the weather. *Id.* In *Knop*, the Sixth Circuit affirmed a district court's decision finding that the Department of Corrections violated the inmates' Eighth Amendment rights where the Department failed to provide proper winter clothing during Michigan's severe winters. 977 F.2d at 1011–13.

Cell temperatures: The Tenth Circuit has found an actionable Eighth Amendment claim where, for days, weeks, or months at a time, prison officials allegedly left an inmate naked in a concrete cell with no clothing, blankets, bedding, or "heat at a time when nighttime temperatures hovered in the mid-fifties . . . ." *Mitchell v. Maynard*, 80 F.3d at 1442. These conditions were allegedly accompanied by other deprivations that, in combination with the allegations of inadequate heat or alternatives for warmth, represented "a significant departure from the 'healthy habilitative environment' the state is required to provide its inmates." *Id.* (quoting *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (deprivations included minimal toilet paper, inadequate ventilation, and the denial of the inmate's eyeglasses, writing utensils, exercise, and hot water), *cert. denied*, 450 U.S. 1041 (1981). In another case, the Tenth Circuit found that "plaintiff's allegations that on two separate occasions he was placed in isolation without clothes, a mattress, or bedding, and without any means to keep warm" were sufficient "to support his conditions of confinement claim [and] withstand sua sponte dismissal." *DeSpain I*, 2000 WL 1228003, at *4 (citing *Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991)). In so finding, however, the Tenth Circuit noted that the period of time the inmate was in the unheated cell—seventy-two hours on each occasion—was "relatively short," where the outdoor temperature at the time was thirty to forty degrees. *Id.* Finally, the Tenth Circuit disagreed with a district court finding that an inmate had provided "no evidence" to support his "cold cell claim" where the inmate alleged that his cell's temperature ranged from forty to sixty-five degrees during the day and dropped to "an almost unbearable low" at night for a non-consecutive period of almost two months. *Skelton*, 409 F. App'x at 203–04 (not deciding the objective prong, however, because inmate failed to produce evidence sufficient to meet the subjective prong).

The shortest duration of cold in a prison cell found to support a conditions of confinement claim entailed multiple fifteen to thirty minute strip searches in cells with broken windows. *Del Raine v. Williford*, 32 F.3d 1024, 1031, 1035–36 (7th Cir. 1998). The inmate in *Del Raine* alleged that prison officials conducted the strip searches every few days; while they ransacked his cell, they left him handcuffed and freezing. *Id.* at 1031. At the time of the searches, the temperature outside was allegedly "forty to fifty degrees below zero with the wind chill[,]" and the temperature inside the cell was "not much higher." *Id.* at 1031, 1035.

Plaintiff's evidence is insufficient to meet the objective prong: The facts as alleged by Plaintiff do not fit so neatly into our Eighth Amendment conditions of confinement jurisprudence. Being left in a police transport van is not as extreme a situation as inmates being left in inclement weather conditions outside, but it is arguably more severe than spending time in an unheated prison cell. The Court finds guidance in the Tenth Circuit's language in *DeSpain I*. 2000 WL 1228003, at *4. Where the inmate in *DeSpain* was left for seventy-two hours in an unheated cell without clothing, blankets, or bedding, and the temperature outside was thirty to forty degrees, the Tenth Circuit found that the evidence was sufficient to withstand summary dismissal, but it also noted that seventy-two hours was a "relatively short" duration. *Id.* at *2–4. Here, Plaintiff was left for up to two hours in an unheated van with an outside temperature as low as thirty degrees. Plaintiff did have clothes, but they were inadequate to protect her from inclement weather or severe cold. She had limited mobility, and so she could not have moved around to warm herself up. Still, the duration was significantly shorter than that in *DeSpain*. Hence, the Court finds that Plaintiff has not alleged sufficient information to demonstrate a genuine issue of fact on the objective prong. Even if she had alleged sufficient information, her

Eighth Amendment claim fails for a variety of other reasons as discussed *infra* at Part IV(B)(2)(b)–(c).

### b.      Plaintiff has not satisfied the subjective component.

"The subjective component requires the . . . official to have a 'sufficiently culpable state of mind.'" *DeSpain I*, 2000 WL 1228003, at *3 (quoting *Wilson v. Seiter*, 501 U.S. at 297). Where a plaintiff claims inhumane conditions of confinement, "the required state of mind is one of 'deliberate indifference to inmate health and safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834 (internal citation omitted)). "In other words," Defendants will only be liable if they knew "of and disregard[ed] an excessive risk to [Plaintiff's] health and safety . . . ." *Id.* (quoting *Farmer*, 511 U.S. at 837). Defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and" they must have drawn the inference. *Id.* (quoting *Farmer*, 511 U.S. at 837). "It is not enough to establish that the official should have known of the risk of harm." *Id.* (quoting *Barney*, 143 F.3d at 1310). Here, Plaintiff alleged in her complaint that Defendant Schneider apologized repeatedly when he retrieved her from the van. (Doc. 30 at 11–12.) This allegation alone negates an inference that either Defendant had the required state of mind. Plaintiff fails to meet the subjective prong under these facts.

In response to the motion for summary judgment, Plaintiff argues that "Defendants must have been able to hear Plaintiff calling because Plaintiff was able to hear them talking outside in normal voices." (Doc. 40 at 14; *see also* Gmyr-Maez Aff. ¶ 10.) In light of this new allegation, it appears Plaintiff is arguing that Defendants knowingly locked Plaintiff in the van. This scenario is similar to a case out of the District of Colorado. *Brosh v. Duke* (*Brosh II*), No. 12-CV-00337-CMA-MJW, 2012 WL 5289536 (D. Colo. Oct. 24, 2012) *aff'd*, 616 F. App'x 883 (10th Cir. 2015). In *Brosh*, two inmates working in the kitchen of a correction facility were carrying milk

cartons to a walk-in cooler. *Id.* at *1. The defendant, a prison guard, allowed the inmates to enter the cooler and intentionally locked them inside. *Id.* The inmates brought a conditions of confinement claim, and the magistrate judge recommended that the defendant's motion to dismiss be granted, finding that the twenty minutes the inmates were locked in a cooler with a temperature somewhere above freezing were insufficient as a matter of law to meet the objective prong. *Brosh v. Duke* (*Brosh I*), No. 12-CV-00337-CMA-MJW, 2012 WL 5289569, at *2–4 (D. Colo. July 23, 2012) *R. & R. adopted in part, rejected in part*, No. 12-CV-00337-CMA-MJW, 2012 WL 5289536 (D. Colo. Oct. 24, 2012) *aff'd*, 616 F. App'x 883 (10th Cir. 2015).

"The district court adopted in part and rejected in part the magistrate judge's recommendation." *Brosh v. Duke* (*Brosh III*), 616 F. App'x 883, 886 (10th Cir. 2015). The district court agreed that the inmates "had failed to plead a plausible conditions of confinement claim." *Id.* (citation and brackets omitted). Instead, the court found that because the defendant guard had "forcibly restricted [the inmates'] movement, . . . it is reasonable to infer that [the guard's] purpose was to cause harm to" the inmates. *Brosh II*, 2012 WL 5289536, at *4. The court found that these facts were instead "sufficient to sustain an excessive force claim against" the guard.[7] *Id.*

The same reasoning would apply here, given Plaintiff's allegation that Defendants heard her calling for help and failed to respond. *See id.* Assuming it is true that Defendants knowingly locked Plaintiff in the van, then Plaintiff has submitted evidence that Defendants "forcibly restricted Plaintiff['s] movement . . . ." *Id.* Such a "use of force, although indirect, implicates

---

[7] Analyzing the excessive force claim under the Eighth Amendment standard, the district court found that the inmates had alleged facts sufficient to withstand the motion to dismiss, and that the defendant's assertion of qualified immunity failed. *Brosh v. Duke* (*Brosh II*), No. 12-CV-00337-CMA-MJW, 2012 WL 5289536, at *4–5 (D. Colo. Oct. 24, 2012), *aff'd*, 616 F. App'x 883 (10th Cir. 2015). Defendant "subsequently moved for summary judgment on that excessive force claim[,]" and the district court granted the guard's motion. *Brosh v. Duke* (*Brosh III*), 616 F. App'x 883, 887 (10th Cir. 2015). The Tenth Circuit affirmed the grant of summary judgment. *Id.* at 889.

the" Fourth Amendment, because Plaintiff was an arrestee. *Id.* (citation omitted); *see also Estate of Booker*, 745 F.3d at 419; *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010) ("To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'") (quoting *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994)). Under this theory, Plaintiff incorrectly styled her claim as one for inhumane conditions of confinement in violation of the Eighth Amendment, where it should be analyzed as an excessive force claim in violation of the Fourth Amendment. *Brosh II*, 2012 WL 5289536, at *4. Consequently, Plaintiff's claim fails under either set of facts: (1) if Plaintiff maintains that Defendant Schneider apologized, she has failed to demonstrate evidence to meet the subjective prong of a conditions of confinement claim, *see DeSpain I*, 2000 WL 1228003, at *3; and (2) if Plaintiff contends that Defendants knowingly locked her in the van alone, the claim should be analyzed under a Fourth Amendment excessive force standard rather than an Eighth Amendment standard for inhumane conditions of confinement, *see Brosh II*, 2012 WL 5289536, at *4.

### c. Plaintiff has not demonstrated that the relevant law was clearly established.

Even if Plaintiff had demonstrated that there was a genuine issue of fact on both the objective and subjective prongs of her conditions of confinement claim, Plaintiff would also have to demonstrate that the law was clearly established with respect to this issue. *Anderson v. Creighton*, 483 U.S. at 640. To satisfy this inquiry, Plaintiff must show that a reasonable officer would have known that Plaintiff's rights under the Eighth Amendment would be violated where the officer left Plaintiff handcuffed, seat belted, and with limited mobility in a vehicle with limited ventilation and no way to see outside for up to two hours with inadequate clothing to stay

warm in thirty degree weather. *See id.* As discussed *supra* at Part IV(B)(2)(a)–(b), there are no cases in the Tenth Circuit or elsewhere with particularly analogous fact patterns.

The key when determining whether an issue is clearly established "is notice—an official somehow must be on notice that the conduct in question could violate the plaintiff's constitutional rights. There need not be precedent declaring the exact conduct at issue to be unlawful, as long as 'the alleged unlawfulness was apparent in light of preexisting law.'" *DeSpain II*, 264 F.3d at 979 (quoting *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (internal citation omitted); citing *Anderson v. Creighton*, 483 U.S. at 640). In a conditions of confinement claim, the law was clearly established that a plaintiff must demonstrate that the official subjectively acted with "deliberate indifference to [her] health or safety." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Skelton*, 409 F. App'x at 202.

Had Defendants forgotten Plaintiff in the van, it was not clearly established that they would be held liable for inhumane conditions of confinement. "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Farmer*, 511 U.S. at 836 (citations omitted). "Deliberate indifference . . . must involve more than ordinary lack of due care for the prisoner's interests or safety." *Berry v. City of Muskogee, Okla.*, 900 F.2d 1489, 1495 (10th Cir. 1990) (citations omitted). Plaintiff has not cited any authority that equates an instant of forgetfulness with deliberate indifference or recklessness.

Further, if Plaintiff argues that Defendants locked her in the van on purpose, the *Brosh* decision would support a finding that Plaintiff's claim is more appropriately styled as excessive force under the Fourth Amendment rather than inhumane conditions of confinement under the Eighth Amendment. *Brosh II*, 2012 WL 5289536, at *4. For these reasons, Plaintiff has not

shown that the law on this issue was clearly established. Defendants are entitled to qualified immunity and their motion is granted with respect to Plaintiff's claim that her Eighth Amendment rights were violated. Plaintiff's claim under the Fourteenth Amendment (using the Eighth Amendment analysis) is dismissed.

### C.      Count II—Fourth Amendment Claim

#### 1.      Law Regarding Excessive Force

When "officers move for qualified immunity on an excessive force claim, a plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007). Courts analyze excessive force claims "under the 'objective reasonableness' standard that governs other Fourth Amendment inquiries." *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, (citations omitted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* (citations omitted).

#### a.      Plaintiff's has demonstrated that there is a genuine issue of material fact on her excessive force claim.

Plaintiff's allegations support two different theories: either Defendants intentionally locked Plaintiff alone in a van, or they forgot her. Under the Fourth Amendment's objective reasonableness standard, however, Defendants' intentions are irrelevant. *See id.* at 398 (finding

that a "consideration of whether . . . officers acted in 'good faith' or 'maliciously and sadistically for the very purpose of causing harm,' is incompatible with a proper Fourth Amendment analysis). To determine whether a use of force is reasonable, courts "weigh 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Cordova*, 569 F.3d at 1188 (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007)). The Tenth Circuit finds the following factors useful when balancing these interests: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . [and] whether the officers' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Id.* (citations omitted).

Plaintiff was arrested for a misdemeanor crime. (First Am. Compl. ¶ 8.) Defendants have not alleged that Plaintiff posed any kind of threat, nor that Plaintiff was resisting arrest or attempting to flee. (*See* Docs. 30; 47.) If Defendants did indeed leave Plaintiff locked in a van alone for almost two hours, they have come forward with no justifiable interest in doing so. *See Cortez*, 478 F.3d at 1131 (finding that "the level of force the defendants used against [the plaintiff] was unreasonable in relation to the threat that she presented and the surrounding circumstances"); *see also United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994) ("the government does not try to elaborate why it believes the quantum of force used . . . was reasonable"). Plaintiff has raised a genuine issue of material fact on whether it was objectively reasonable to leave her alone in the van for up to two hours.

Defendants argue, however, that Plaintiff's claim fails because Plaintiff offered no evidence that she suffered more than a de minimus injury. (Doc. 30 at 13.) Plaintiff asserts that

she does not need to show a "more-than-de-minimus" injury, because she is not pursuing an overly tight handcuffing claim. (Doc. 40 at 14.) While it is true that Plaintiff would need to show more than a de minimus injury for an overly tight handcuffing claim, *see Cortez*, 478 F.3d at 1129, she is not bringing such a claim. (*Id.* at 14–15.) *See also Fisher v. City of Las Cruces*, 584 F.3d 888, 902 (10th Cir. 2009) ("no one in *Cortez* suggested that a non-de minimis injury is required for excessive force claims other than those alleging overly tight handcuffing") (citing *Cortez*, 478 F.3d at 1131). Plaintiff's claim involves the amount of time she was handcuffed alone in the police transport van, together with the other factual circumstances as alleged in her complaint.

There are several relevant Tenth Circuit cases that discuss excessive force claims where there is no evidence of an "actual injury." *See Cortez*, 478 F.3d at 1130–32; *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001); *Grass v. Johnson*. 322 F. App'x 586, 589–90 (10th Cir. 2009); *Chidester v. Utah Cty.*, 268 F. App'x 718, 727–28 (10th Cir. 2008). In *Holland*, SWAT team deputies aimed their weapons at several children during the execution of warrants, even after they had gained control of the premises and occupants. *Holland*, 268 F.3d at 1183–84, 1193. The Tenth Circuit "held the officers' conduct violated [the children's] Fourth Amendment rights, explaining that the unwarranted nature of the force, rather than its potential for physical harm, was what rendered it unconstitutionally excessive." *Grass*, 322 F. App'x at 589 (citing *Holland*, 268 F.3d at 1195). The Tenth Circuit explained that while a "[p]hysical injury may be the most obvious injury that flows from the use of excessive force[,] . . . the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests[,]" such as "a person's 'sense of security' and individual dignity." *Holland*, 268 F.3d at 1195.

25

The Tenth Circuit encountered a somewhat similar excessive force claim in *Chidester*, where a SWAT team officer encountered a person who was outside of a target residence while the SWAT team was executing a no-knock warrant. 268 F. App'x at 725–28. During the course of the encounter, the officer tackled the plaintiff while he had his hands in the air, put him "face down in the rocks and dirt with his knee in the middle of his back and his hand pressing his face in the dirt . . . for 'a minute or so.'" *Id.* at 723. While the court found that the plaintiff's injuries "were rather minor[,]" it held that the officer's behavior in engaging a compliant suspect "in such a physical manner was not reasonable." *Id.* at 727–28. Again, it was the "unwarranted nature of the force, rather than its potential for physical harm" that turned this *Terry* stop into a possible violation of the plaintiff's Fourth Amendment rights. *Grass*, 322 F. App'x at 589 (citation omitted); *see also Chidester*, 268 F. App'x at 727.

The Tenth Circuit elaborated on its holding in *Holland* in finding that an excessive force claim was warranted during another *Terry* stop in *Cortez v. McCauley*. 478 F.3d at 1131–32. In holding that the level of intrusiveness was unwarranted, the court paid particular attention to the fact that Ms. Cortez was a non-suspect, and the use of force occurred during a *Terry* stop. *Id.* at 1130–31. The Court found that "[p]hysical contact is not required for an excessive force claim— patently unreasonable conduct is." *Id.* at 1131. Because the officers had "no warrant or authority to search, let alone to force Tina Cortez out of her house in the middle of the night, to take her keys, and to hold her against her will for an hour in a locked patrol car[,]" the court found that there was evidence of "a substantial and unjustified invasion of Tina Cortez's personal security that hardly can be considered de minimus." *Id.* at 1132 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) ("evaluating all factors including the length of detention")).

The Tenth Circuit applied this prohibition against "patently unreasonable" conduct to an arrestee in *Grass*. 322 F. App'x 586. There, the plaintiff alleged that after the defendant police officer arrested him for driving under the influence and seat-belted him into the patrol car, the officer "punched him in the face, giving him a black eye." *Id.* at 587. The district court dismissed the excessive force claim, noting that "Grass sustained only a de minimus injury, which cannot support a Fourth Amendment claim as a matter of law." *Id.* at 588. The Tenth Circuit noted that the problem with requiring actual injury "is that it implicitly sanctions an officer's use of force, albeit resulting in only minor injury, that was wholly unnecessary to carry out the arrest." *Id.* at 589. The court reversed the dismissal of the excessive force claim, reaffirming the holding in *Cortez* that "an excessive force claim is not dependent on physical injury or even physical contact, but on 'patently unreasonable conduct' by the arresting officer." *Id.* at 590 (citing *Cortez*, 478 F.3d at 1131). As in *Grass*, where the officer's "use of force came after [Plaintiff] was subdued and not posing a threat to anyone[,]" Plaintiff has raised a factual question about whether Defendants' behavior in leaving her in the van was "patently unreasonable." *Id.*

   **b. It is unclear whether the law on Plaintiff's excessive force claim was clearly established.**

The second part of the qualified immunity inquiry for the Court to consider is whether the law on this issue was clearly established. "This is a very close case, especially given the lack of" any alleged physical or emotional injury. *Mazzoni v. Morales*, Civ. No. 07–432 LH/ACT, 2009 WL 8656877, at *14 n.4 (D.N.M. June 9, 2009). The facts of Plaintiff's case differ in several ways from the cases cited in the immediately preceding section. First, Plaintiff had already been arrested and was on her way to the MDC, unlike the plaintiffs in *Holland*, *Chidester*, and *Cortez*. Second, the conduct of the Defendants was not "actively abusive," as it was in *Grass*. That is not

to say, however, that only "actively abusive" behavior will amount to a Fourth Amendment violation. *Grass*, 322 F. App'x at 589. In fact, the Tenth Circuit said that the holding in *Grass* was "of limited value[,] . . . because *Cortez* did not involve allegations of unjustified and actively abusive behavior by the arresting officer." *Id.*

In deciding whether "[t]he contours of [a] right are sufficiently clear," *Anderson v. Creighton*, 483 U.S. at 640, the Tenth Circuit has "adopted a sliding scale to determine when law is clearly established." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)). Where an officer's conduct is "sloppy and negligent" rather than "egregious or reckless[,] . . . the sliding scale leans toward specificity . . . ." *Conner v. Rodriguez*, 891 F. Supp. 2d 1228, 1232 (D.N.M. 2011). In this case, there is a genuine issue of fact about the officers' conduct, and so the Court may not determine whether the law was clearly established without further discovery. The Court will deny Defendants' motion as to the excessive force claim and allow the parties to conduct limited discovery on this issue.

### D.   Counts IV and V—Negligent Operation of Motor Vehicles and Negligent Operation of Equipment and Machinery

With respect to Plaintiff's state law claims under N.M.S.A. §§ 41-4-5 and -6, the Court will reserve its decision until after the parties have engaged in discovery regarding the officers' conduct as directed *infra* at Part V. If the parties uncover evidence that points to intentional conduct on the part of the Defendants, Plaintiff's claims would be for harm from the officers' intentional torts, not for negligence. *See, e.g.*, N.M.S.A. §41-4-12 (waiving immunity for an

officer's intentional conduct in causing certain specified torts); *see also Glover v. Gartman*, 899 F. Supp. 2d 1115, 1142 (D.N.M. 2012).

   **E.     Count VI—Negligent Hiring, Training, Supervision and Retention**

   Defendants contend that Plaintiff's failure to submit a timely notice of her negligent hiring, training, supervision and retention claim to the City of Albuquerque bars her from recovering. (Doc. 30 at 19–20.) "The Tort Claims Act requires a tort victim to give a written notice of claim within 90 days after an occurrence giving rise to the claim as a condition precedent to an action under that Act." *Godwin v. Mem'l Med. Ctr.*, 25 P.3d 273, 280 (2001) (citing N.M.S.A. 1978, § 41-4-16(A)–(B) (1977)). "This notice-of-claim requirement operates as a statutory limitations period and failure to file a timely notice of claim is a statutory bar to suit." *Id.* (citing *Marrujo v. N.M. Highway Transp. Dep't*, 887 P.2d 747, 752 (1994); *Ferguson v. N.M. State Highway Comm'n* (*Ferguson II*), 656 P.2d 244, 247 (1982)).

   Plaintiff admits that she did not comply with the written notice requirement, but she contends that she gave "actual notice" to the City, which is a recognized exception to the written notice requirement. (Doc. 40 at 21–22.) *See also Frappier v. Mergler*, 752 P.2d 253, 265 (N.M. 1988). The New Mexico Supreme Court has held that "actual notice" means that a potential plaintiff must put "the governmental entity allegedly at fault on notice that there is a claim against it, thereby satisfying the statutory purpose to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit." *Lopez v. State*, 930 P.2d 146, 149 (N.M. 1996) (citations omitted). Plaintiff would need to demonstrate, therefore, that notifying the medical screener that she was left in a van and experiencing pain served as actual notice to the City of Albuquerque that she was bringing a claim against the City. *See id.* This is exactly what Plaintiff contends, but notably, Plaintiff does not allege she told the medical screener that she intended to

file a lawsuit; she merely complained that she was left alone and was in pain. (Doc. 40 at 22.) Plaintiff cites no authority to support such a leap—that complaining of pain to a medical screener at the MDC qualifies as "actual notice" to the City of Albuquerque at a completely different location.

Plaintiff also alleges that her complaint put the City on notice. (*Id.*) But as Defendants correctly point out, the Tort Claims Act requires the victim of an alleged tort to give notice within ninety days of the occurrence that gave rise to the suit. N.M.S.A. §41-4-16(A)–(B). Plaintiff filed her complaint in state court on June 5, 2015, more than ninety days after the incident on March 4, 2014. (Doc. 1-A, Comp.) Plaintiff failed to come forward with any evidence showing that she gave actual or written notice of her claim to the City of Albuquerque within the statutory time period. Defendants have met their burden to show that Plaintiff did not comply with the statutory requirements of § 41-4-16(A), and thus this Court does not "have jurisdiction to consider" Plaintiff's claim against the City of Albuquerque. N.M.S.A. §41-4-16(B). The Court will grant Defendants' motion on this issue.

## V.      Plaintiff's Motion for Relief from the Stay and for Limited Discovery

Plaintiff has demonstrated that there is a genuine question of material fact regarding whether or not Defendants used excessive force in holding her in the transport van. As discussed *supra* at Part IV(C)(1)(b), the Court will grant Plaintiff's motion for limited discovery on this issue. The parties may conduct discovery on the narrow issue regarding the officers' conduct in leaving Plaintiff in the van, as well as how long Plaintiff was actually in the van alone. The Court will grant sixty days within which to accomplish this discovery, and the parties shall file any additional pleadings that are appropriate within two weeks thereafter.

The remainder of Plaintiff's motion is denied. The Court did not consider any of the controverted evidence in ruling on Defendants' motion. *See supra* Part IV. The Court viewed all evidence in a light most favorable to Plaintiff, accepting her allegations as true. Fed. R. Civ. P. 56; *see also Garrison*, 428 F.3d at 935. Of the discovery Plaintiff requested in her motion relevant to her claims under the Eighth and Fourteenth Amendments, Plaintiff could have submitted no additional evidence that would have changed this Court's decision. The remainder of Plaintiff's request for limited discovery is denied.

## VI.    Conclusion

With respect to Defendants' motion for summary judgment (Doc. 30), the Court finds the following:

Counts I & III: Plaintiff failed to demonstrate a genuine issue of material fact regarding her conditions of confinement claim pursuant to the Eighth Amendment (via the Fourteenth Amendment). Defendants are entitled to qualified immunity, and their motion is granted with respect to Counts I and III. Plaintiff's claim under the Fourteenth Amendment (using the Eighth Amendment analysis) is dismissed.

Count II: Plaintiff has raised a factual question about whether Defendants' behavior in leaving her in the van was "patently unreasonable." Defendants are not entitled to qualified immunity with respect to Plaintiff's excessive force claim under the Fourth Amendment at this stage of litigation. Defendants' motion is denied with respect to Plaintiff's excessive force claim pursuant to the Fourth Amendment.

Counts IV–V: The Court will reserve its decision on Plaintiff's state law claims regarding negligent operation of motor vehicles and negligent operation of equipment and machinery under

the New Mexico Tort Claims Act until after the parties have engaged in discovery regarding the officers' conduct.

Count VI: Defendants have met their burden to show that Plaintiff failed to provide actual or written notice to the City of Albuquerque on her claim for negligent hiring, training, supervision and retention within the statutory time period. Defendants' motion is granted with respect to this claim, and Plaintiff's claim against the City of Albuquerque is dismissed. Because there are no claims remaining against the City of Albuquerque, the City is dismissed as a Defendant to this suit.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Amended Motion for Summary Judgment filed on September 3, 2015 (Doc. 30) is **GRANTED** as to Plaintiff's claims for cruel and unusual punishment in violation of the Eight Amendment via the Fourteenth Amendment and negligent hiring, training, supervision, and retention under the New Mexico Tort Claims Act.

**IT IS FURTHER ORDERED** that Defendants' Amended Motion for Summary Judgment is **OTHERWISE DENIED**.

**IT IS FURTHER ORDERED** that the affidavit from Plaintiff's counsel, which the Court construes as a motion for relief from the stay and for limited discovery (Doc. 39) is **GRANTED IN PART** as described herein. The Court will grant sixty days within which to accomplish the limited discovery, and the parties shall file any additional pleadings that are appropriate within two weeks thereafter.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**